**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ASTELLAS PHARMA INC.; ASTELLAS US LLC; ASTELLAS PHARMA US, INC.; BASILEA PHARMACEUTICA INTERNATIONAL LTD, ALLSCHWIL, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CIPLA LIMITED; CIPLA USA, INC.; HANGZHOU XUANMU PHARMACEUTICAL CO., LTD.; HANGZHOU MUYUAN BIOLOGICAL PHARMACEUTICAL SCIENCE & TECHNOLOGY CO., LTD.; ANNORA PHARMA PRIVATE LIMITED; HETERO LABS LIMITED; HETERO USA, INC.; ZENARA PHARMA PRIVATE LIMITED; BIOPHORE INDIA PHARMACEUTICALS PRIVATE LIMITED; BIOPHORE PHARMA, INC., | ) C.A. _____ ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Astellas Pharma Inc. ("API"), Astellas US LLC ("AUS"), Astellas Pharma US, Inc. ("APUS"), and Basilea Pharmaceutica International Ltd, Allschwil ("Basilea") (collectively, "Plaintiffs"), for their Complaint against Defendants Cipla Limited ("Cipla Ltd.") and Cipla USA, Inc., ("Cipla USA") (collectively, "Cipla Defendants"); Hangzhou Xuanmu Pharmaceutical Co, Ltd. ("Hangzhou Xuanmu") and Hangzhou Muyuan Biological Pharmaceutical Science & Technology Co., Ltd. ("Hangzhou Muyuan") (collectively, "Hangzhou Defendants"); Annora Pharma Private Limited ("Annora"), Hetero Labs Limited ("Hetero Labs"), and Hetero USA, Inc. ("Hetero USA") (collectively, "Annora Defendants"); and Zenara Pharma Private Limited

ME1 51379016v.1

("Zenara"), Biophore India Pharmaceuticals Private Limited ("Biophore India"), and Biophore Pharma, Inc. ("Biophore Pharma") (collectively, "Zenara Defendants") (all collectively, "Defendants"), hereby allege as follows:

## PARTIES

### Plaintiffs

1. Plaintiff API is a corporation organized and existing under the laws of Japan, having its principal place of business at 2-5-1, Nihonbashi-Honcho, Chuo-Ku, Tokyo 103-8411, Japan.

2. Plaintiff AUS is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 2375 Waterview Drive, Northbrook, Illinois 60062, United States.

3. Plaintiff APUS is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 2375 Waterview Drive, Northbrook, Illinois 60062, United States.

4. Plaintiff Basilea is a corporation organized and existing under the laws of Switzerland, having its principal place of business at Hegenheimermattweg 167b, 4123 Allschwil, Switzerland.

### Cipla Defendants

5. On information and belief, Defendant Cipla Ltd. is a corporation organized and existing under the laws of India, having a principal place of business at Cipla House, Peninsula Business Park, Ganpatrao Kadam Marg, Lower Parel, Mumbai Maharashtra, India 400013.

6. On information and belief, Cipla Ltd., by itself and/or through its affiliates and agents, is in the business of, *inter alia*, manufacturing, marketing, importing, preparing, and selling

2

ME1 51379016v.1

generic pharmaceutical products that it distributes in the State of Delaware and throughout the United States.

7.    On information and belief, Defendant Cipla USA is a corporation organized and existing under the laws of Delaware, having a principal place of business at 10 Independence Blvd., Suite 300, Warren, New Jersey 07059, United States.

8.    On information and belief, in *Acerta Pharma B.V. et al. v. Cipla Limited and Cipla USA, Inc.*, 24-587 (D. Del.) (D.I. 10 at 3), Cipla USA stated that it is an indirect, wholly owned subsidiary of Cipla Ltd.

9.    On information and belief, Cipla USA, by itself and/or through its affiliates and agents, is in the business of, *inter alia*, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the State of Delaware and throughout the United States.

10.    On information and belief, the Cipla Defendants are agents of each other with respect to the development, regulatory approval, marketing, sale, and/or distribution of generic products within the United States.  On information and belief, the acts of the Cipla Defendants complained of herein were done with the cooperation, participation, and assistance of, and at least in part for the benefit of, each other.

11.    On information and belief, the Cipla Defendants have cooperated and assisted in the preparation and filing of Abbreviated New Drug Application ("ANDA") No. 219268 ("Cipla ANDA") and will be involved in the manufacture, importation, marketing, and/or sale of the drug that is the subject of the Cipla ANDA, if approved by the United States Food and Drug Administration ("FDA").

ME1 51379016v.1

**Hangzhou Defendants**

12.     On information and belief, Defendant Hangzhou Xuanmu is a corporation organized and existing under the laws of China, having a principal place of business at Room 201, Block C, No. 8-1 Gaoshun Road, Wuchang Street, Yuhang District, Hangzhou, Zhejiang, 311100, China.

13.     On information and belief, Hangzhou Xuanmu, by itself and/or through its affiliates and agents, is in the business of, *inter alia*, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the State of Delaware and throughout the United States.

14.     On information and belief, Defendant Hangzhou Muyuan is a corporation organized and existing under the laws of China, having a principal place of business at Room 668, Block C, No. 8-1, Gaoshun Road, Wuchang Sub-District, Yuhang District, Hangzhou, Zhejiang, 310000, China.

15.     On information and belief, Hangzhou Muyuan, by itself and/or through its affiliates and agents, is in the business of, *inter alia*, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the State of Delaware and throughout the United States.

16.     On information and belief Hangzhou Xuanmu is a wholly owned subsidiary of Hangzhou Muyuan.

17.     On information and belief, the Hangzhou Defendants are agents of each other with respect to the development, regulatory approval, marketing, sale, and/or distribution of generic products within the United States.  On information and belief, the acts of the Hangzhou Defendants

4

ME1 51379016v.1

complained of herein were done with the cooperation, participation, and assistance of, and at least in part for the benefit of, each other.

18. On information and belief, the Hangzhou Defendants have cooperated and assisted in the preparation and filing of ANDA No. 219867 ("Hangzhou ANDA") and will be involved in the manufacture, importation, marketing, and/or sale of the drug that is the subject of the Hangzhou ANDA, if approved by the FDA.

**Annora Defendants**

19. On information and belief, Defendant Annora is a corporation organized and existing under the laws of India, having a principal place of business at Sy. No. 261, Plot No. 13 and 14, Annaram Village, Gummadidala Mandal, Sangareddy Dist., Telangana State, 502313, India.

20. On information and belief, Annora, by itself and/or through its affiliates and agents, is in the business of, *inter alia*, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the State of Delaware and throughout the United States.

21. On information and belief, Defendant Hetero Labs is a corporation organized and existing under the laws of India, having a principal place of business at 7-2-A2, Hetero Corporate Industrial Estates, Sanath Nagar, Hyderabad 500 018, Telangana, India.

22. On information and belief, Hetero Labs, by itself and/or through its affiliates and agents, is in the business of, *inter alia*, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the State of Delaware and throughout the United States.

ME1 51379016v.1

23. On information and belief, Defendant Hetero USA is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1035 Centennial Avenue, Piscataway, NJ 08854, United States.

24. On information and belief, Hetero USA, by itself and/or through its affiliates and agents, is in the business of, *inter alia*, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the State of Delaware and throughout the United States.

25. On information and belief Annora and Hetero USA are both wholly owned subsidiaries of Hetero Labs.

26. On information and belief, the Annora Defendants are agents of each other with respect to the development, regulatory approval, marketing, sale, and/or distribution of generic products within the United States. On information and belief, the acts of the Annora Defendants complained of herein were done with the cooperation, participation, and assistance of, and at least in part for the benefit of, each other.

27. On information and belief, the Annora Defendants have cooperated and assisted in the preparation and filing of ANDA No. 219439 ("Annora ANDA") and will be involved in the manufacture, importation, marketing, and/or sale of the drug that is the subject of the Annora ANDA, if approved by the FDA.

### Zenara Defendants

28. On information and belief, Defendant Zenara is a corporation organized and existing under the laws of India, having a principal place of business at Plot No. 83/B, 84, 87 to 96, Phase III, IDA Cherlapally, Hyderabad, Telangana, 500051, India.

6

29.    On information and belief, Zenara, by itself and/or through its affiliates and agents, is in the business of, *inter alia*, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the State of Delaware and throughout the United States.

30.    On information and belief, Defendant Biophore India is a corporation organized and existing under the laws of India, having a principal place of business at Plot 92, 1-98/2/92, Kavuri Hills, Phase II, Jubliee Hills, Hyderabad, Telangana, 500033, India.

31.    On information and belief, Biophore India, by itself and/or through its affiliates and agents, is in the business of, *inter alia*, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the State of Delaware and throughout the United States.

32.    On information and belief, Zenara is a wholly owned subsidiary of Biophore India.

33.    On information and belief, Biophore Pharma is a corporation organized and existing under the laws of New Jersey, having a principal place of business at 4262 US Highway 1, Suite A, Monmouth Junction, New Jersey 08852, United States.

34.    On information and belief, Biophore Pharma, by itself and/or through its affiliates and agents, is in the business of, *inter alia*, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the State of Delaware and throughout the United States.

35.    On information and belief, Biophore Pharma is a wholly owned subsidiary of Biophore India.

36.    On information and belief, the Zenara Defendants are agents of each other with respect to the development, regulatory approval, marketing, sale, and/or distribution of generic

7

products within the United States.  On information and belief, the acts of the Zenara Defendants complained of herein were done with the cooperation, participation, and assistance of, and at least in part for the benefit of, each other.

37.     On information and belief, the Zenara Defendants have cooperated and assisted in the preparation and filing of ANDA No. 219402 ("Zenara ANDA") and will be involved in the manufacture, importation, marketing, and/or sale of the drug that is the subject of the Zenara ANDA, if approved by the FDA.

## NATURE OF THE ACTION

38.     This is a civil action for the infringement of U.S. Patent Nos. 6,812,238 ("the '238 Patent"), 10,206,879 ("the '879 Patent"), and 10,603,280 ("the '280 Patent") under the patent laws of the United States, 35 U.S.C. § 100 *et seq*., arising from Defendants' filing of ANDA Nos. 219268 (Cipla Defendants), 219867 (Hangzhou Defendants), 219439 (Annora Defendants), and 219402 (Zenara Defendants) with the FDA seeking approval to market generic versions of the pharmaceutical product CRESEMBA® (isavuconazonium sulfate) capsules, for oral use, 74.5 mg and 186 mg ("CRESEMBA® capsules"), before the expiration of the '238, '879, and '280 Patents covering CRESEMBA® capsules.

## JURISDICTION AND VENUE

39.     This Court has jurisdiction over the subject matter of this action, including Counts I-IX against the Defendants, pursuant to 28 U.S.C. §§ 1331 and 1338.

## Cipla Defendants

40.     This Court has personal jurisdiction over the Cipla Defendants by virtue of the fact that, *inter alia*, the Cipla Defendants have committed the tortious act of patent infringement

8

pursuant to 35 U.S.C. § 271(e)(2)(A) that has led to foreseeable harm and injury to Plaintiffs in the State of Delaware and throughout the United States.

41. This Court has personal jurisdiction over the Cipla Defendants by virtue of the fact that, on information and belief, the Cipla Defendants, either directly or through their affiliates, regularly and continuously do or solicit business in Delaware, engage in other persistent courses of conduct in Delaware, and/or derive substantial revenue from services of things used or consumed in Delaware, including by selling their pharmaceutical products in Delaware and, therefore can reasonably expect to be subject to jurisdiction in the Delaware courts. On information and belief, the Cipla Defendants conduct marketing and sales activities in the State of Delaware, including but not limited to, distribution, marketing, and sales of pharmaceutical products to Delaware residents that are continuous and systematic. On information and belief, if the Cipla ANDA is approved, the Cipla Defendants will market and sell their generic version of CRESEMBA® capsules in Delaware.

42. This Court has personal jurisdiction over Cipla Ltd. On information and belief, Cipla Ltd. regularly and continuously conducts business with Delaware, either directly or through its subsidiary Cipla USA, a Delaware corporation, including by selling pharmaceutical products in Delaware.

43. This Court further has personal jurisdiction over Cipla Ltd. by virtue of the fact that Cipla Ltd. has previously submitted to the jurisdiction of this Court and purposefully availed itself of this Court by consenting to this Court's jurisdiction and asserting counterclaims in civil actions initiated in this jurisdiction, including but not limited to, *e.g.*, *Acerta Pharma B.V. et al. v. Cipla Limited et al.*, C.A. No. 24-587-GBW; *Gilead Sciences, Inc. v. Cipla Limited,* C.A. No. 23-1480-

ME1 51379016v.1

MN; *Hikma Pharmaceuticals USA, Inc. v. Cipla USA, Inc. and Cipla Limited*, C.A. No. 23-1157-GBW.

44.    Alternatively, this Court may exercise jurisdiction over Cipla Ltd. pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiffs' claims arise under federal law; (b) Cipla Ltd. is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Cipla Ltd. has sufficient contacts with the United States as a whole, including, but not limited to, manufacturing and/or selling pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over Cipla Ltd. satisfies due process.

45.    This Court has personal jurisdiction over Cipla USA.  Upon information and belief, Cipla USA regularly and continuously conducts business in Delaware and is a corporation organized and existing under the laws of the State of Delaware, registered with the Delaware Department of State Division of Corporations as a business operating in Delaware under ID No. 5207954.

46.    This Court further has personal jurisdiction over Cipla USA by virtue of the fact that Cipla USA has previously submitted to the jurisdiction of this Court and purposefully availed itself of this Court by consenting to this Court's jurisdiction and asserting counterclaims in civil actions initiated in this jurisdiction, including but not limited to, *e.g.*, *Acerta Pharma B.V. et al. v. Cipla Limited et al.*, C.A. No. 24-587-GBW; *Hikma Pharmaceuticals USA, Inc. v. Cipla USA, Inc. and Cipla Limited*, C.A. No. 23-1157-GBW.

47.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

10

48.    Venue is proper as to Cipla Ltd. in this judicial district because, *inter alia*, Cipla Ltd. is a foreign corporation not residing in any United States district and may be sued in any judicial district.

49.    Venue is proper as to Cipla USA in this judicial district because, *inter alia*, Cipla USA is a corporation organized and existing under the laws of the State of Delaware.

50.    Venue is further proper in this Court as to the Cipla Defendants because, *inter alia*, they have committed, aided, abetted, contributed to, and/or participated in the commission of acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, which manufacture CRESEMBA® capsules for sale throughout the United States, including within the State of Delaware.

### Hangzhou Defendants

51.    This Court has personal jurisdiction over the Hangzhou Defendants by virtue of the fact that, *inter alia*, the Hangzhou Defendants have committed the tortious act of patent infringement pursuant to 35 U.S.C. § 271(e)(2)(A) that has led to foreseeable harm and injury to Plaintiffs in the State of Delaware and throughout the United States.

52.    This Court has personal jurisdiction over the Hangzhou Defendants by virtue of the fact that, on information and belief, the Hangzhou Defendants, either directly or through their affiliates, regularly and continuously do or solicit business in Delaware, engage in other persistent courses of conduct in Delaware, and/or derive substantial revenue from services of things used or consumed in Delaware, including by selling their pharmaceutical products in Delaware and, therefore can reasonably expect to be subject to jurisdiction in the Delaware courts.    On information and belief, the Hangzhou Defendants conduct marketing and sales activities in the State of Delaware, including but not limited to, distribution, marketing, and sales of

11

pharmaceutical products to Delaware residents that are continuous and systematic.  On information and belief, if the Hangzhou ANDA is approved, the Hangzhou Defendants will market and sell their generic version of CRESEMBA® capsules in Delaware.

53.     This Court has personal jurisdiction over Hangzhou Xuanmu.  On information and belief, Hangzhou Xuanmu regularly and continuously conducts business with Delaware, either directly or through its affiliate/parent Hangzhou Muyuan, including by selling pharmaceutical products in Delaware.

54.     Alternatively, this Court may exercise jurisdiction over Hangzhou Xuanmu pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiffs' claims arise under federal law; (b) Hangzhou Xuanmu is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Hangzhou Xuanmu has sufficient contacts with the United States as a whole, including, but not limited to, manufacturing and/or selling pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over Hangzhou Xuanmu satisfies due process.

55.     This Court has personal jurisdiction over Hangzhou Muyuan.  On information and belief, Hangzhou Muyuan regularly and continuously conducts business with Delaware, either directly or through its affiliate/subsidiary Hangzhou Xuanmu, including by selling pharmaceutical products in Delaware.

56.     Alternatively, this Court may exercise jurisdiction over Hangzhou Muyuan pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiffs' claims arise under federal law; (b) Hangzhou Muyuan is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Hangzhou Muyuan has sufficient contacts with the United States as a whole, including, but not limited to, manufacturing and/or selling

ME1 51379016v.1

pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over Hangzhou Muyuan satisfies due process.

57.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

58.     Venue is proper as to Hangzhou Xuanmu and Hangzhou Muyuan in this judicial district because, *inter alia*, Hangzhou Xuanmu and Hangzhou Muyuan are both foreign corporations not residing in any United States district and may be sued in any judicial district.

59.     Venue is further proper in this Court as to the Hangzhou Defendants because, *inter alia*, they have committed, aided, abetted, contributed to, and/or participated in the commission of acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, which manufacture CRESEMBA® capsules for sale throughout the United States, including within the State of Delaware.

### Annora Defendants

60.     This Court has personal jurisdiction over the Annora Defendants by virtue of the fact that, *inter alia*, the Annora Defendants have committed the tortious act of patent infringement pursuant to 35 U.S.C. § 271(e)(2)(A) that has led to foreseeable harm and injury to Plaintiffs in the State of Delaware and throughout the United States.

61.     This Court has personal jurisdiction over the Annora Defendants by virtue of the fact that, on information and belief, the Annora Defendants, either directly or through their affiliates, regularly and continuously do or solicit business in Delaware, engage in other persistent courses of conduct in Delaware, and/or derive substantial revenue from services of things used or consumed in Delaware, including by selling their pharmaceutical products in Delaware and, therefore can reasonably expect to be subject to jurisdiction in the Delaware courts.    On information and belief, the Annora Defendants conduct marketing and sales activities in the State

13

ME1 51379016v.1

of Delaware, including but not limited to, distribution, marketing, and sales of pharmaceutical products to Delaware residents that are continuous and systematic.  On information and belief, if the Annora ANDA is approved, the Annora Defendants will market and sell their generic version of CRESEMBA® capsules in Delaware.

62.     This Court has personal jurisdiction over Annora.  On information and belief, Annora regularly and continuously conducts business with Delaware, either directly or through its affiliates/parent Hetero Labs and Hetero USA, the latter a Delaware corporation, including by selling pharmaceutical products in Delaware.

63.     This Court further has personal jurisdiction over Annora by virtue of the fact that Annora has previously submitted to the jurisdiction of this Court and purposefully availed itself of this Court by consenting to this Court's jurisdiction and asserting counterclaims in civil actions initiated in this jurisdiction, including but not limited to, *e.g.*, *Merck Sharp & Dohme Corp. v. Annora Pharma Private Limited and Hetero USA Inc.*, 21-cv-1006-RGA; *Pierre Fabre Dermatologie et al. v. Annora Pharma Private Limited*, 22-cv-1442-RGA.

64.     Alternatively, this Court may exercise jurisdiction over Annora pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiffs' claims arise under federal law; (b) Annora is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Annora has sufficient contacts with the United States as a whole, including, but not limited to, manufacturing and/or selling pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over Annora satisfies due process.

65.     This Court has personal jurisdiction over Hetero Labs.  On information and belief, Hetero Labs regularly and continuously conducts business with Delaware, either directly or

14

through its affiliates/subsidiaries Hetero USA and Annora, the former a Delaware corporation, including by selling pharmaceutical products in Delaware.

66.     This Court further has personal jurisdiction over Hetero Labs by virtue of the fact that Hetero Labs has previously submitted to the jurisdiction of this Court and purposefully availed itself of this Court by consenting to this Court's jurisdiction and asserting counterclaims in civil actions initiated in this jurisdiction, including but not limited to, *e.g.*, *AbbVie Inc. v. Hetero USA, Inc. et al.*, C.A. No. 24-924 (MN); *Breckenridge Pharmaceutical, Inc. v. Hetero USA, Inc. et al.*, C.A. No. 24-571-GBW.

67.     Alternatively, this Court may exercise jurisdiction over Hetero Labs pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiffs' claims arise under federal law; (b) Hetero Labs is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Hetero Labs has sufficient contacts with the United States as a whole, including, but not limited to, manufacturing and/or selling pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over Hetero Labs satisfies due process.

68.     This Court has personal jurisdiction over Hetero USA.  On information and belief, Hetero USA regularly and continuously conducts business in Delaware and is a corporation organized and existing under the laws of the State of Delaware, registered with the Delaware Department of State Division of Corporations as a business operating in Delaware under ID No. 4837317.

69.     This Court further has personal jurisdiction over Hetero USA by virtue of the fact that Hetero USA has previously submitted to the jurisdiction of this Court and purposefully availed itself of this Court by consenting to this Court's jurisdiction and asserting counterclaims in civil

ME1 51379016v.1

actions initiated in this jurisdiction, including but not limited to, *e.g.*, *AbbVie Inc. v. Hetero USA, Inc. et al.*, C.A. No. 24-924 (MN); *Breckenridge Pharmaceutical, Inc. v. Hetero USA, Inc. et al.*, C.A. No. 24-571-GBW.

70.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

71.     Venue is proper as to Annora and Hetero Labs in this judicial district because, *inter alia*, Annora and Hetero Labs are both foreign corporations not residing in any United States district and may be sued in any judicial district.

72.     Venue is proper as to Hetero USA in this judicial district because, *inter alia*, Hetero USA is a corporation organized and existing under the laws of the State of Delaware.

73.     Venue is further proper in this Court as to the Annora Defendants because, *inter alia*, they have committed, aided, abetted, contributed to, and/or participated in the commission of acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, which manufacture CRESEMBA® capsules for sale throughout the United States, including within the State of Delaware.

**<u>Zenara Defendants</u>**

74.     This Court has personal jurisdiction over the Zenara Defendants by virtue of the fact that, *inter alia*, the Zenara Defendants have committed the tortious act of patent infringement pursuant to 35 U.S.C. § 271(e)(2)(A) that has led to foreseeable harm and injury to Plaintiffs in the State of Delaware and throughout the United States.

75.     This Court has personal jurisdiction over the Zenara Defendants by virtue of the fact that, on information and belief, the Zenara Defendants, either directly or through their affiliates, regularly and continuously do or solicit business in Delaware, engage in other persistent courses of conduct in Delaware, and/or derive substantial revenue from services of things used or

16

consumed in Delaware, including by selling their pharmaceutical products in Delaware and, therefore can reasonably expect to be subject to jurisdiction in the Delaware courts. On information and belief, the Zenara Defendants conduct marketing and sales activities in the State of Delaware, including but not limited to, distribution, marketing, and sales of pharmaceutical products to Delaware residents that are continuous and systematic. On information and belief, if the Zenara ANDA is approved, the Zenara Defendants will market and sell their generic version of CRESEMBA® capsules in Delaware.

76.     This Court has personal jurisdiction over Zenara. On information and belief, Zenara regularly and continuously conducts business with Delaware, either directly or through its affiliates/parents Biophore India and Biophore Pharma, including by selling pharmaceutical products in Delaware.

77.     This Court further has personal jurisdiction over Zenara by virtue of the fact that Zenara has previously submitted to the jurisdiction of this Court and purposefully availed itself of this Court by consenting to this Court's jurisdiction in civil actions initiated in this jurisdiction, including but not limited to, *e.g.*, *Harmony Biosciences, LLC et al. v. AET Pharma US, Inc.*, C.A. No. 23-1340; *Otsuka Pharmaceutical Co., Ltd. and H. Lundbeck A/S v. Zenara Pharma Private Ltd. and Biophore India Pharmaceuticals Private Ltd.*, C.A. No. 22-1269-LPS; *Intercept Pharmaceuticals, Inc. et al. v. Zenara Pharma Private Limited*, C.A. No. 22-1215-MN; *Merck Sharp & Dohme Corp. et al. v. Zenara Pharma Private Limited*, C.A. No. 22-379-VAC.

78.     Alternatively, this Court may exercise jurisdiction over Zenara pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiffs' claims arise under federal law; (b) Zenara is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Zenara has sufficient contacts with the United States as a whole, including, but not limited to,

ME1 51379016v.1

manufacturing and/or selling pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over Zenara satisfies due process.

79.    This Court has personal jurisdiction over Biophore India.  On information and belief, Biophore India regularly and continuously conducts business with Delaware, either directly or through its affiliates/subsidiaries Zenara and Biophore Pharma, including by selling pharmaceutical products in Delaware.

80.    This Court further has personal jurisdiction over Biophore India by virtue of the fact that Biophore India has previously submitted to the jurisdiction of this Court and purposefully availed itself of this Court by consenting to this Court's jurisdiction in civil actions initiated in this jurisdiction, including but not limited to, *e.g.*, *Harmony Biosciences, LLC et al. v. AET Pharma US, Inc.*, C.A. No. 23-1340; *Otsuka Pharmaceutical Co., Ltd. and H. Lundbeck A/S v. Zenara Pharma Private Ltd. and Biophore India Pharmaceuticals Private Ltd.*, C.A. No. 22-1269-LPS.

81.    Alternatively, this Court may exercise jurisdiction over Biophore India pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiffs' claims arise under federal law; (b) Biophore India is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Biophore India has sufficient contacts with the United States as a whole, including, but not limited to, manufacturing and/or selling pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over Biophore India satisfies due process.

82.    This Court has personal jurisdiction over Biophore Pharma.  On information and belief, Biophore Pharma regularly and continuously conducts business with Delaware, either directly or through its affiliates/subsidiaries Zenara and Biophore India, including by selling pharmaceutical products in Delaware.

ME1 51379016v.1

83.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

84.     Venue is proper as to Zenara and Biophore India in this judicial district because, *inter alia*, Zenara and Biophore India are both foreign corporations not residing in any United States district and may be sued in any judicial district.

85.     Venue is further proper in this Court as to the Zenara Defendants because, *inter alia*, they have committed, aided, abetted, contributed to, and/or participated in the commission of acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, which manufacture CRESEMBA® capsules for sale throughout the United States, including within the State of Delaware.

## THE CRESEMBA® CAPSULE NDA

86.     Plaintiff APUS filed New Drug Application ("NDA") No. 207500 for CRESEMBA® capsules, for oral use, 74.5 mg and 186 mg isavuconazonium sulfate.  The FDA approved NDA No. 207500 on March 6, 2015, for treatment of invasive aspergillosis and invasive mucormycosis in patients 18 years of age and older.  On December 8, 2023, the FDA approved an expanded indication for treatment of invasive aspergillosis and invasive mucormycosis in adults and pediatric patients 6 years of age and older who weigh 16 kilograms (kg) and greater.  APUS sells CRESEMBA® capsules in the United States.

19

87.     Isavuconazonium sulfate is a compound that can be referred to by any of several chemical names, including glycine, *N*-methyl-, [2-[[[1-[1-[(2*R*,3*R*)-3-[4-(4-cyanophenyl)-2-thiazolyl]-2-(2,5-difluorophenyl)-2-hydroxybutyl]-4*H*-1,2,4-triazolium-4-yl]ethoxy]carbonyl]methylamino]-3-pyridinyl]methyl ester, sulfate (1:1), and which has the following chemical structure:

## THE PATENTS-IN-SUIT

88.     On November 2, 2004, the '238 Patent, entitled "N-Substituted Carbamoyloxyalkyl-Azolium Derivatives" was duly and legally issued to Plaintiff Basilea. A true and correct copy of the '238 Patent is attached hereto as Exhibit A.

89.     The '238 Patent claims, *inter alia*, isavuconazonium sulfate.

90.     Pursuant to an agreement, as amended, entered into between Basilea and API, API was granted an exclusive license to the '238 Patent, with the right to sue for infringement of the '238 Patent in the United States.

91.     Pursuant to an agreement, as amended, between API and AUS, AUS was granted an exclusive sublicense to the '238 Patent, with the right to sue for infringement of the '238 Patent in the United States.

20

92.     Pursuant to an agreement between AUS and APUS, APUS was granted a sublicense to the '238 Patent, with the right to sue for infringement of the '238 Patent in the United States.

93.     On February 19, 2019, the '879 Patent entitled "Active Ingredient Containing Stabilised Solid Medicinal Forms and Methods for the Production Thereof" was duly and legally issued to Losan Pharma GmbH ("Losan").  A true and correct copy of the '879 Patent is attached hereto as Exhibit B.

94.     The '879 Patent claims, *inter alia*, solid medicinal forms comprising a hydroxypropylmethylcellulose ("HPMC") capsule and a capsule filling containing a moisture-sensitive active ingredient (which includes isavuconazonium sulfate), trimagnesium dicitrate, and microcrystalline cellulose.

95.     On March 31, 2020, the '280 Patent, entitled "Active Ingredient Containing Stabilised Solid Medicinal Forms and Methods for the Production Thereof" was duly and legally issued to Losan.  A true and correct copy of the '280 Patent is attached hereto as Exhibit C.

96.     The '280 Patent claims, *inter alia*, solid medicinal forms comprising an HPMC capsule and a capsule filling containing a moisture-sensitive active ingredient (which includes isavuconazonium sulfate ), trimagnesium dicitrate, and microcrystalline cellulose.

97.     Pursuant to an agreement entered into between API, AUS, APUS, Basilea, and Losan, Losan assigned and transferred all ownership rights with respect to the '879 and '280 Patents to Plaintiff API.

98.     In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the '238, '879, and '280 Patents are listed in the FDA's *Approved Drug Products with Therapeutic Equivalents Evaluations* (the "Orange Book") for CRESEMBA® capsules.

21

## ACTS GIVING RISE TO THE PATENT INFRINGEMENT COUNTS

### Cipla Defendants

99.     By a letter dated October 24, 2024 ("Cipla Notice Letter"), the Cipla Defendants informed Plaintiffs API, APUS, and Basilea that they had submitted the Cipla ANDA to the FDA seeking approval to manufacture, use, and/or sell isavuconazonium sulfate capsules for oral use, 74.5 mg and 186 mg ("Cipla's Generic Products") prior to the expiration of the '238, '879, and '280 Patents.

100.     On information and belief, the Cipla Defendants submitted the Cipla ANDA to the FDA under § 505(j) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), seeking approval to engage in commercial manufacture, use, and sale of Cipla's Generic Products as generic versions of CRESEMBA® capsules.

101.     On information and belief, the Cipla ANDA seeks FDA approval of Cipla's Generic Products for the indications of treatment of invasive aspergillosis and invasive mucormycosis.

102.     The Cipla Notice Letter also advised Plaintiffs API, APUS, and Basilea that Cipla's ANDA submission included certifications under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) that, in the Cipla Defendants' opinion, certain claims of the '238, '879, and '280 Patents are invalid, unenforceable, and/or will not be infringed by the commercial manufacture, sale, and/or use of Cipla's Generic Products.

103.     The Cipla Notice Letter does not allege non-infringement of certain claims of the '238 Patent.

104.     By not identifying non-infringement defenses for certain claims of the '238 Patent, the Cipla Defendants concede Cipla's Generic Products meet all limitations of those claims.

22

ME1 51379016v.1

105.     The Cipla Notice Letter does not allege invalidity under 35 U.S.C. §§ 101, 102, 112, or unenforceability for any claim of the '238 Patent.

106.     By not identifying invalidity defenses under 35 U.S.C. §§ 101, 102, 112, or unenforceability, the Cipla Defendants concede the '238 Patent claims are valid under 35 U.S.C. §§ 101, 102, and 112, and are enforceable.

107.     The Cipla Notice Letter does not allege invalidity under 35 U.S.C. §§ 101, 102, 103, 112, for obviousness-type double patenting, or unenforceability for any claim of the '879 and/or '280 Patents.

108.     By not identifying invalidity defenses under 35 U.S.C. §§ 101, 102, 103, 112, for obviousness-type double patenting, or unenforceability, the Cipla Defendants concede the '879 and '280 Patent claims are valid under 35 U.S.C. §§ 101, 102, 103, 112, and the obviousness-type double patenting doctrine and are enforceable.

109.     There is an actual, real, immediate, and justiciable controversy between Plaintiffs and the Cipla Defendants regarding the infringement, validity, and enforceability of the '238, '879, and '280 Patents.

110.     On information and belief, following FDA approval of the Cipla ANDA, the Cipla Defendants will act in concert to make, use, offer to sell, or sell Cipla's Generic Products throughout the United States, or import such generic products into the United States.

111.     On information and belief, following FDA approval of the Cipla ANDA, the Cipla Defendants intend to directly benefit from sales of Cipla's Generic Products.

112.     Plaintiffs are commencing this action against the Cipla Defendants within 45 days of receiving the Cipla Notice Letter pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

ME1 51379016v.1

**Hangzhou Defendants**

113.    By a letter dated October 23, 2024 ("Hangzhou Notice Letter"), the Hangzhou Defendants informed Plaintiffs APUS and API that they had submitted the Hangzhou ANDA to the FDA seeking approval to manufacture, use, and/or sell isavuconazonium sulfate capsules, for oral use, 186 mg ("Hangzhou's Generic Product") prior to the expiration of the '879 and '280 Patents.

114.    On information and belief, the Hangzhou Defendants submitted the Hangzhou ANDA to the FDA under § 505(j) of the FDCA, seeking approval to engage in commercial manufacture, use, and sale of Hangzhou's Generic Product as a generic version of CRESEMBA® capsules.

115.    On information and belief, the Hangzhou ANDA seeks FDA approval of Hangzhou's Generic Product for the indications of treatment of invasive aspergillosis and invasive mucormycosis.

116.    The Hangzhou Notice Letter also advised Plaintiffs APUS and API that Hangzhou's ANDA submission included certifications under 21 U.S.C.§ 355(j)(2)(A)(vii)(IV) that, in the Hangzhou Defendants' opinion, certain claims of the '879 and '280 Patents are invalid, unenforceable, and/or will not be infringed by the commercial manufacture, sale, and/or use of Hangzhou's Generic Product.

117.    The Hangzhou Notice Letter does not allege invalidity under 35 U.S.C. §§ 101, 102, 103, 112, for obviousness-type double patenting, or unenforceability for any claim of the '879 and/or '280 Patents.

118.    By not identifying invalidity defenses under 35 U.S.C. §§ 101, 102, 103, 112, for obviousness-type double patenting, or unenforceability, the Hangzhou Defendants concede the

24

'879 Patent and '280 Patent claims are valid under 35 U.S.C. §§ 101, 102, 103, and 112, and the obviousness-type double patenting doctrine and are enforceable.

119.    There is an actual, real, immediate, and justiciable controversy between Plaintiffs and the Hangzhou Defendants regarding the infringement, validity, and enforceability of the '879 and '280 Patents.

120.    On information and belief, following FDA approval of the Hangzhou ANDA, the Hangzhou Defendants will act in concert to make, use, offer to sell, or sell Hangzhou's Generic Product throughout the United States, or import such a generic product into the United States.

121.    On information and belief, following FDA approval of the Hangzhou ANDA, the Hangzhou Defendants intend to directly benefit from sales of Hangzhou's Generic Product.

122.    Plaintiffs are commencing this action against the Hangzhou Defendants within 45 days of receiving the Hangzhou Notice Letter pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

**Annora Defendants**

123.    By a letter dated November 1, 2024 ("Annora Notice Letter"), the Annora Defendants informed Plaintiff APUS that they had submitted the Annora ANDA to the FDA seeking approval to manufacture, use, and/or sell isavuconazonium sulfate capsules, for oral use, 74.5 mg and 186 mg ("Annora's Generic Products") prior to the expiration of the '879 and '280 Patents.

124.    On information and belief, the Annora Defendants submitted the Annora ANDA to the FDA under § 505(j) of the FDCA, seeking approval to engage in commercial manufacture, use, and sale of Annora's Generic Products as generic versions of CRESEMBA® capsules.

25

125.    On information and belief, the Annora ANDA seeks FDA approval of Annora's Generic Products for the indications of treatment of invasive aspergillosis and invasive mucormycosis.

126.    The Annora Notice Letter also advised Plaintiff APUS that Annora's ANDA submission included certifications under 21 U.S.C.§ 355(j)(2)(A)(vii)(IV) that, in the Annora Defendants' opinion, certain claims of the '879 and '280 Patents are invalid, unenforceable, and/or will not be infringed by the commercial manufacture, sale, and/or use of Annora's Generic Products.

127.    The Annora Notice Letter does not allege invalidity under 35 U.S.C. §§ 101, 102, 103, for obviousness-type double patenting, or unenforceability for any claim of the '879 and/or '280 Patents.

128.    By not identifying invalidity defenses under 35 U.S.C. §§ 101, 102, 103, for obviousness-type double patenting, or unenforceability, the Annora Defendants concede the '879 and '280 Patent claims are valid under 35 U.S.C. §§ 101, 102, 103, and the obviousness-type double patenting doctrine and are enforceable.

129.    There is an actual, real, immediate, and justiciable controversy between Plaintiffs and the Annora Defendants regarding the infringement, validity, and enforceability of the '879 and '280 Patents.

130.    On information and belief, following FDA approval of the Annora ANDA, the Annora Defendants will act in concert to make, use, offer to sell, or sell Annora's Generic Products throughout the United States, or import such generic products into the United States.

131.    On information and belief, following FDA approval of the Annora ANDA, the Annora Defendants intend to directly benefit from sales of Annora's Generic Products.

26

132.    Plaintiffs are commencing this action against the Annora Defendants within 45 days of receiving the Annora Notice Letter pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

## Zenara Defendants

133.    By a letter dated November 2, 2024 ("Zenara Notice Letter"), the Zenara Defendants informed Plaintiffs API and APUS that they had submitted the Zenara ANDA to the FDA seeking approval to manufacture, use, and/or sell isavuconazonium sulfate capsules, for oral use, 186 mg ("Zenara's Generic Product") prior to the expiration of the '879 and '280 Patents.

134.    On information and belief, the Zenara Defendants submitted the Zenara ANDA to the FDA under § 505(j) of the FDCA, seeking approval to engage in commercial manufacture, use, and sale of Zenara's Generic Product as a generic version of CRESEMBA® capsules.

135.    On information and belief, the Zenara ANDA seeks FDA approval of Zenara's Generic Product for the indications of treatment of invasive aspergillosis and invasive mucormycosis.

136.    The Zenara Notice Letter also advised Plaintiffs API and APUS that Zenara's ANDA submission included certifications under 21 U.S.C.§ 355(j)(2)(A)(vii)(IV) that, in the Zenara Defendants' opinion, certain claims of the '879 and '280 Patents are invalid, unenforceable, and/or will not be infringed by the commercial manufacture, sale, and/or use of Zenara's Generic Product.

137.    The Zenara Notice Letter does not allege invalidity under 35 U.S.C. §§ 101, 102, 103, for obviousness-type double patenting, or unenforceability for any claim of the '879 and/or '280 Patents.

138.    By not identifying invalidity defenses under 35 U.S.C. §§ 101, 102, 103, for obviousness-type double patenting, or unenforceability, the Zenara Defendants concede the '879

and '280 Patent claims are valid under 35 U.S.C. §§ 101, 102, 103, and the obviousness-type double patenting doctrine and are enforceable.

139.    There is an actual, real, immediate, and justiciable controversy between Plaintiffs and the Zenara Defendants regarding the infringement, validity, and enforceability of the '879 and '280 Patents.

140.    On information and belief, following FDA approval of the Zenara ANDA, the Zenara Defendants will act in concert to make, use, offer to sell, or sell Zenara's Generic Product throughout the United States, or import such a generic product into the United States.

141.    On information and belief, following FDA approval of the Zenara ANDA, the Zenara Defendants intend to directly benefit from sales of Zenara's Generic Product.

142.    Plaintiffs are commencing this action against the Zenara Defendants within 45 days of receiving the Zenara Notice Letter pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

## COUNT I

### (Infringement of the '879 Patent by the Cipla Defendants)

143.    Plaintiffs incorporate each of the preceding paragraphs 1-142 as if fully set forth herein.

144.    By submitting the Cipla ANDA to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Cipla's Generic Products throughout the United States, including Delaware, prior to the expiration of the '879 Patent, the Cipla Defendants committed an act of infringement of the '879 Patent under 35 U.S.C. § 271(e)(2)(A).

145.    The '879 Patent claims, *inter alia*, solid medicinal forms containing a moisture-sensitive active ingredient and trimagnesium dicitrate.  Claim 1 recites "[a] non-effervescent solid

28

ME1 51379016v.1

medicinal form comprising a hydroxypropylmethylcellulose (HPMC) capsule filled with a capsule filling comprising: a. 30 to 40% by weight of a moisture-sensitive active ingredient, wherein said active ingredient is not trimagnesium dicitrate; b. 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and c. 5 to 30% by weight of a microcrystalline cellulose; wherein said medicinal form exhibits a drying loss, measured at 120° C./30 min, of 0.5 to 2.5% and a relative equilibrium moisture, measured at 25° C., of at most 15%."

146.    The formulation of CRESEMBA® capsules is a non-effervescent solid medicinal form comprising an HPMC capsule filled with a capsule filling comprising: 30 to 40% by weight of a moisture-sensitive active ingredient (isavuconazonium sulfate), wherein said active ingredient is not trimagnesium dicitrate; 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and 5 to 30% by weight of a microcrystalline cellulose, wherein the medicinal form exhibits a drying loss, measured at 120° C/30 min, of 0.5 to 2.5% and a relative equilibrium moisture, measured at 25°C, of at most 15%.  The formulation of CRESEMBA® capsules is covered by the '879 Patent.

147.    The Cipla Notice Letter does not dispute that Cipla's Generic Products will be non-effervescent solid medicinal forms comprising HPMC capsules filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate, and microcrystalline cellulose, or that they will exhibit a drying loss and a relative equilibrium moisture within the scope of the claims.

148.    On information and belief, Cipla's Generic Products, if approved by the FDA, will infringe one or more claims of the '879 Patent because Cipla's Generic Products will be non-effervescent solid medicinal forms comprising HPMC capsules filled with a moisture-sensitive

active ingredient (isavuconazonium sulfate), trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage, and microcrystalline cellulose, and will exhibit a drying loss and a relative equilibrium moisture within the scope of the claims.

149.    On information and belief, the Cipla Defendants' manufacture, use, sale, offer for sale, and/or importation into the United States of Cipla's Generic Products prior to the expiration of the '879 Patent, including any applicable exclusivities or extensions, will directly infringe one or more claims of the '879 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.  The Cipla Defendants will infringe one or more claims of the '879 Patent.

150.    On information and belief, the Cipla Defendants were aware of the existence of the '879 Patent and its listing in the Orange Book as demonstrated by their reference to the '879 Patent in the Cipla Notice Letter.

151.    On information and belief, the Cipla Defendants copied the claimed invention of the '879 Patent.

152.    On information and belief, the Cipla Defendants know or should know that their commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's Generic Products prior to patent expiry will infringe one or more claims of the '879 Patent.

153.    On information and belief, the Cipla Defendants' statement of the factual and legal bases for their opinions regarding non-infringement and invalidity of the '879 Patent is devoid of an objective good faith basis either in the facts or the law.  This case is exceptional.

154.    Plaintiffs will be substantially and irreparably harmed by the infringing activities of the Cipla Defendants as described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

ME1 51379016v.1

## COUNT II

### (Infringement of the '280 Patent by the Cipla Defendants)

155.    Plaintiffs incorporate each of the preceding paragraphs 1-142 as if fully set forth herein.

156.    By submitting the Cipla ANDA to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Cipla's Generic Products throughout the United States, including Delaware, prior to the expiration of the '280 Patent, the Cipla Defendants committed an act of infringement of the '280 Patent under 35 U.S.C. § 271(e)(2)(A).

157.    The '280 Patent claims, *inter alia*, solid medicinal forms containing a moisture-sensitive active ingredient and trimagnesium dicitrate.  Claim 1 recites "[a] non-effervescent solid medicinal form comprising a hydroxypropylmethylcellulose (HPMC) capsule filled with a capsule filling comprising: a. 20 to 40% by weight of a moisture-sensitive active ingredient, wherein said active ingredient is not trimagnesium dicitrate; b. 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and c. 5 to 30% by weight of a microcrystalline cellulose; wherein said medicinal form exhibits a relative equilibrium moisture, measured at 25° C., of at most 15%."

158.    The formulation of CRESEMBA® capsules is a non-effervescent solid medicinal form comprising an HMPC capsule filled with a capsule filling comprising: 20 to 40% by weight of a moisture-sensitive active ingredient (isavuconazonium sulfate), wherein said active ingredient is not trimagnesium dicitrate; 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and 5 to 30% by weight of a microcrystalline cellulose, wherein the medicinal form exhibits a relative

31

equilibrium moisture, measured at 25°C, of at most 15%. The formulation of CRESEMBA® capsules is covered by the '280 Patent.

159. The Cipla Notice Letter does not dispute that Cipla's Generic Products will be non-effervescent solid medicinal forms comprising HPMC capsules filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate, and microcrystalline cellulose, or that they will exhibit a relative equilibrium moisture within the scope of the claims.

160. On information and belief, Cipla's Generic Products, if approved by the FDA, will infringe one or more claims of the '280 Patent because Cipla's Generic Products will be non-effervescent solid medicinal forms comprising HPMC capsules filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage, and microcrystalline cellulose, and will exhibit a relative equilibrium moisture within the scope of the claims.

161. On information and belief, the Cipla Defendants' manufacture, use, sale, offer for sale, and/or importation into the United States of Cipla's Generic Products prior to the expiration of the '280 Patent, including any applicable exclusivities or extensions, will directly infringe one or more claims of the '280 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents. The Cipla Defendants will infringe one or more claims of the '280 Patent.

162. On information and belief, the Cipla Defendants were aware of the existence of the '280 Patent and its listing in the Orange Book as demonstrated by their reference to the '280 Patent in the Cipla Notice Letter.

163. On information and belief, the Cipla Defendants copied the claimed invention of the '280 Patent.

32

164.    On information and belief, the Cipla Defendants know or should know that their commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's Generic Products prior to patent expiry will infringe one or more claims of the '280 Patent.

165.    On information and belief, the Cipla Defendants' statement of the factual and legal bases for their opinions regarding non-infringement and invalidity of the '280 Patent is devoid of an objective good faith basis either in the facts or the law.  This case is exceptional.

166.    Plaintiffs will be substantially and irreparably harmed by the infringing activities of the Cipla Defendants as described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## COUNT III

### (Infringement of the '238 Patent by the Cipla Defendants)

167.    Plaintiffs incorporate each of the preceding paragraphs 1-142 as if fully set forth herein.

168.    By submitting the Cipla ANDA to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Cipla's Generic Products throughout the United States, including Delaware, prior to the expiration of the '238 Patent, the Cipla Defendants committed an act of infringement of the '238 Patent under 35 U.S.C. § 271(e)(2)(A).

169.    On information and belief, Cipla's Generic Products, if approved by the FDA, will contain the compound isavuconazonium sulfate, which will constitute infringement of claims of the '238 Patent.

170.    On information and belief, the Cipla Defendants' manufacture, use, sale, offer for sale, and/or importation into the United States of Cipla's Generic Products prior to the expiration

33

of the '238 Patent, including any applicable exclusivities or extensions, will directly infringe one or more claims of the '238 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.  The Cipla Defendants will infringe one or more claims of the '238 Patent.

171.    On information and belief, Cipla's Generic Products will directly and literally infringe at least claim 3 of the '238 Patent, which recites:

3. The Compound having formula (II),

(II)

wherein

is pyridin-2-yl;

$R^1$ is hydrogen or alkyl;

$R^2$ is hydrogen, alkyl, alkylcarbonyloxyalkyl, alkoxycarbonyl, alkylcarbonyl, mono- or dialkylaminoalkylcarbonyloxyalkyl;

Q is a 3-[4-(4-cyanophenyl)thiazol-2-yl)]-2-(2,5-difluorophenyl)-1-(1H-1,2,4-triazol-1-yl)-butan-2-ol moiety which is linked to the remainder of the compound of formula (II) by a nitrogen in the triazole;

$X^-$ is a pharmaceutically acceptable anion;

$R^4$ and $R^5$ are independently selected from the group consisting of hydrogen, halogen, alkyl, alkoxy, alkylthio, alkylsulfinyl, alkylsulfonyl, carboxy, alkyloxycarbonyl, cyano, trifluoromethyl, trifluoromethoxy nitro, aminosulfonyl, alkylaminocarboyloxyalkyl, sulfo, alkylcarbonyloxyalkyl and aminoalkylcarbonyloxyalkyl; and

$R^6$ is hydroxy, alkoxycarbonylalkylamino, alkoxycarbonylamino, amino, alkylamino, alkylcarbonyloxy, alkoxycarbonylalkylaminoalkylcarbonyloxy, alkoxycarbonylamino-alkylcarbonyloxy, alkylaminoalkylcarbonyloxy, aminoalkylcarbonyloxy, alkylcarbonylamino, alkylcarbonylalkylamino, acyloxy, acylamino, acylalkylamino wherein said acyl group is a hydrolizable radical.

34

172.    On information and belief, Cipla's Generic Products will infringe at least claim 3 of the '238 Patent because Cipla's Generic Products will contain isavuconazonium sulfate.

173.    On information and belief, the Cipla Defendants were aware of the existence of the '238 Patent and its listing in the Orange Book as demonstrated by their reference to the '238 Patent in the Cipla Notice Letter.

174.    On information and belief, the Cipla Defendants copied the claimed invention of the '238 Patent.

175.    On information and belief, the Cipla Defendants know or should know that their commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's Generic Products prior to patent expiry will infringe one or more claims of the '238 Patent.

176.    On information and belief, the Cipla Defendants' statement of the factual and legal bases for their opinions regarding non-infringement and invalidity of the '238 Patent is devoid of an objective good faith basis either in the facts or the law.  This case is exceptional.

177.    Plaintiffs will be substantially and irreparably harmed by the infringing activities of the Cipla Defendants as described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## COUNT IV

### (Infringement of the '879 Patent by the Hangzhou Defendants)

178.    Plaintiffs incorporate each of the preceding paragraphs 1-142 as if fully set forth herein.

179.    By submitting the Hangzhou ANDA to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Hangzhou's Generic Product throughout the United States, including Delaware, prior to the

35

ME1 51379016v.1

expiration of the '879 Patent, the Hangzhou Defendants committed an act of infringement of the '879 Patent under 35 U.S.C. § 271(e)(2)(A).

180.   The '879 Patent claims, *inter alia*, solid medicinal forms containing a moisture-sensitive active ingredient and trimagnesium dicitrate.  Claim 1 recites "[a] non-effervescent solid medicinal form comprising a hydroxypropylmethylcellulose (HPMC) capsule filled with a capsule filling comprising: a. 30 to 40% by weight of a moisture-sensitive active ingredient, wherein said active ingredient is not trimagnesium dicitrate; b. 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and c. 5 to 30% by weight of a microcrystalline cellulose; wherein said medicinal form exhibits a drying loss, measured at 120° C./30 min, of 0.5 to 2.5% and a relative equilibrium moisture, measured at 25° C., of at most 15%."

181.   The formulation of CRESEMBA® capsules is a non-effervescent solid medicinal form comprising an HPMC capsule filled with a capsule filling comprising: 30 to 40% by weight of a moisture-sensitive active ingredient (isavuconazonium sulfate), wherein said active ingredient is not trimagnesium dicitrate; 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and 5 to 30% by weight of a microcrystalline cellulose, wherein the medicinal form exhibits a drying loss, measured at 120° C/30 min, of 0.5 to 2.5% and a relative equilibrium moisture, measured at 25°C, of at most 15%.  The formulation of CRESEMBA® capsules is covered by the '879 Patent.

182.   The Hangzhou Notice Letter does not dispute that Hangzhou's Generic Product will be a non-effervescent solid medicinal form comprising an HPMC capsule filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate, and microcrystalline

36

cellulose, or that it will exhibit a drying loss and a relative equilibrium moisture within the scope of the claims.

183. On information and belief, Hangzhou's Generic Product, if approved by the FDA, will infringe one or more claims of the '879 Patent because Hangzhou's Generic Product will be a non-effervescent solid medicinal form comprising an HPMC capsule filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage, and microcrystalline cellulose, and will exhibit a drying loss and a relative equilibrium moisture within the scope of the claims.

184. On information and belief, the Hangzhou Defendants' manufacture, use, sale, offer for sale, and/or importation into the United States of Hangzhou's Generic Product prior to the expiration of the '879 Patent, including any applicable exclusivities or extensions, will directly infringe one or more claims of the '879 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents. The Hangzhou Defendants will infringe one or more claims of the '879 Patent.

185. On information and belief, the Hangzhou Defendants were aware of the existence of the '879 Patent and its listing in the Orange Book as demonstrated by their reference to the '879 Patent in the Hangzhou Notice Letter.

186. On information and belief, the Hangzhou Defendants copied the claimed invention of the '879 Patent.

187. On information and belief, the Hangzhou Defendants know or should know that their commercial manufacture, use, offer for sale, sale, and/or importation of Hangzhou's Generic Product prior to patent expiry will infringe one or more claims of the '879 Patent.

188.    On information and belief, the Hangzhou Defendants' statement of the factual and legal bases for their opinions regarding non-infringement and invalidity of the '879 Patent is devoid of an objective good faith basis either in the facts or the law.  This case is exceptional.

189.    Plaintiffs will be substantially and irreparably harmed by the infringing activities of the Hangzhou Defendants as described above unless those activities are precluded by this Court.  Plaintiffs have no adequate remedy at law.

## COUNT V

### (Infringement of the '280 Patent by the Hangzhou Defendants)

190.    Plaintiffs incorporate each of the preceding paragraphs 1-142 as if fully set forth herein.

191.    By submitting the Hangzhou ANDA to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Hangzhou's Generic Product throughout the United States, including Delaware, prior to the expiration of the '280 Patent, the Hangzhou Defendants committed an act of infringement of the '280 Patent under 35 U.S.C. § 271(e)(2)(A).

192.    The '280 Patent claims, *inter alia*, solid medicinal forms containing a moisture-sensitive active ingredient and trimagnesium dicitrate.  Claim 1 recites "[a] non-effervescent solid medicinal form comprising a hydroxypropylmethylcellulose (HPMC) capsule filled with a capsule filling comprising: a. 20 to 40% by weight of a moisture-sensitive active ingredient, wherein said active ingredient is not trimagnesium dicitrate; b. 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and c. 5 to 30% by weight of a microcrystalline cellulose; wherein said medicinal form exhibits a relative equilibrium moisture, measured at 25° C., of at most 15%."

38

193.    The formulation of CRESEMBA® capsules is a non-effervescent solid medicinal form comprising an HPMC capsule filled with a capsule filling comprising: 20 to 40% by weight of a moisture-sensitive active ingredient (isavuconazonium sulfate), wherein said active ingredient is not trimagnesium dicitrate; 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and 5 to 30% by weight of a microcrystalline cellulose, wherein the medicinal form exhibits a relative equilibrium moisture, measured at 25°C, of at most 15%.  The formulation of CRESEMBA® capsules is covered by the '280 Patent.

194.    The Hangzhou Notice Letter does not dispute that Hangzhou's Generic Product will be a non-effervescent solid medicinal form comprising an HPMC capsule filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate, and microcrystalline cellulose, or that it will exhibit a relative equilibrium moisture within the scope of the claims.

195.    On information and belief, Hangzhou's Generic Product, if approved by the FDA, will infringe one or more claims of the '280 Patent because Hangzhou's Generic Product will be a non-effervescent solid medicinal form comprising an HPMC capsule filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage, and microcrystalline cellulose, and will exhibit a relative equilibrium moisture within the scope of the claims.

196.    On information and belief, the Hangzhou Defendants' manufacture, use, sale, offer for sale, and/or importation into the United States of Hangzhou's Generic Product prior to the expiration of the '280 Patent, including any applicable exclusivities or extensions, will directly infringe one or more claims of the '280 Patent under 35 U.S.C. § 271(a), either literally or under

the doctrine of equivalents. The Hangzhou Defendants will infringe one or more claims of the '280 Patent.

197. On information and belief, the Hangzhou Defendants were aware of the existence of the '280 Patent and its listing in the Orange Book as demonstrated by their reference to the '280 Patent in the Hangzhou Notice Letter.

198. On information and belief, the Hangzhou Defendants copied the claimed invention of the '280 Patent.

199. On information and belief, the Hangzhou Defendants know or should know that their commercial manufacture, use, offer for sale, sale, and/or importation of Hangzhou's Generic Product prior to patent expiry will infringe one or more claims of the '280 Patent.

200. On information and belief, the Hangzhou Defendants' statement of the factual and legal bases for their opinions regarding non-infringement and invalidity of the '280 Patent is devoid of an objective good faith basis either in the facts or the law. This case is exceptional.

201. Plaintiffs will be substantially and irreparably harmed by the infringing activities of the Hangzhou Defendants as described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## COUNT VI

### (Infringement of the '879 Patent by the Annora Defendants)

202. Plaintiffs incorporate each of the preceding paragraphs 1-142 as if fully set forth herein.

203. By submitting the Annora ANDA to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Annora's Generic Products throughout the United States, including Delaware, prior to the expiration of the

40

'879 Patent, the Annora Defendants committed an act of infringement of the '879 Patent under 35 U.S.C. § 271(e)(2)(A).

204.    The '879 Patent claims, *inter alia*, solid medicinal forms containing a moisture-sensitive active ingredient and trimagnesium dicitrate.  Claim 1 recites "[a] non-effervescent solid medicinal form comprising a hydroxypropylmethylcellulose (HPMC) capsule filled with a capsule filling comprising: a. 30 to 40% by weight of a moisture-sensitive active ingredient, wherein said active ingredient is not trimagnesium dicitrate; b. 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and c. 5 to 30% by weight of a microcrystalline cellulose; wherein said medicinal form exhibits a drying loss, measured at 120° C./30 min, of 0.5 to 2.5% and a relative equilibrium moisture, measured at 25° C., of at most 15%."

205.    The formulation of CRESEMBA® capsules is a non-effervescent solid medicinal form comprising an HPMC capsule filled with a capsule filling comprising: 30 to 40% by weight of a moisture-sensitive active ingredient (isavuconazonium sulfate), wherein said active ingredient is not trimagnesium dicitrate; 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and 5 to 30% by weight of a microcrystalline cellulose, wherein the medicinal form exhibits a drying loss, measured at 120° C/30 min, of 0.5 to 2.5% and a relative equilibrium moisture, measured at 25°C, of at most 15%.  The formulation of CRESEMBA® capsules is covered by the '879 Patent.

206.    The Annora Notice Letter does not dispute that Annora's Generic Products will be non-effervescent solid medicinal forms comprising HPMC capsules filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate, and microcrystalline

41

cellulose, or that they will exhibit a drying loss and a relative equilibrium moisture within the scope of the claims.

207. On information and belief, Annora's Generic Products, if approved by the FDA, will infringe one or more claims of the '879 Patent because Annora's Generic Products will be non-effervescent solid medicinal forms comprising HPMC capsules filled with moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage, and microcrystalline cellulose, and will exhibit a drying loss and a relative equilibrium moisture within the scope of the claims.

208. On information and belief, the Annora Defendants' manufacture, use, sale, offer for sale, and/or importation into the United States of Annora's Generic Products prior to the expiration of the '879 Patent, including any applicable exclusivities or extensions, will directly infringe one or more claims of the '879 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents. The Annora Defendants will infringe one or more claims of the '879 Patent.

209. On information and belief, the Annora Defendants were aware of the existence of the '879 Patent and its listing in the Orange Book as demonstrated by their reference to the '879 Patent in the Annora Notice Letter.

210. On information and belief, the Annora Defendants copied the claimed invention of the '879 Patent.

211. On information and belief, the Annora Defendants know or should know that their commercial manufacture, use, offer for sale, sale, and/or importation of Annora's Generic Products prior to patent expiry will infringe one or more claims of the '879 Patent.

ME1 51379016v.1

212. On information and belief, the Annora Defendants' statement of the factual and legal bases for their opinions regarding non-infringement and invalidity of the '879 Patent is devoid of an objective good faith basis either in the facts or the law. This case is exceptional.

213. Plaintiffs will be substantially and irreparably harmed by the infringing activities of the Annora Defendants as described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## COUNT VII

### (Infringement of the '280 Patent by the Annora Defendants)

214. Plaintiffs incorporate each of the preceding paragraphs 1-142 as if fully set forth herein.

215. By submitting the Annora ANDA to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Annora's Generic Products throughout the United States, including Delaware, prior to the expiration of the '280 Patent, the Annora Defendants committed an act of infringement of the '280 Patent under 35 U.S.C. § 271(e)(2)(A).

216. The '280 Patent claims, *inter alia*, solid medicinal forms containing a moisture-sensitive active ingredient and trimagnesium dicitrate. Claim 1 recites "[a] non-effervescent solid medicinal form comprising a hydroxypropylmethylcellulose (HPMC) capsule filled with a capsule filling comprising: a. 20 to 40% by weight of a moisture-sensitive active ingredient, wherein said active ingredient is not trimagnesium dicitrate; b. 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and c. 5 to 30% by weight of a microcrystalline cellulose; wherein said medicinal form exhibits a relative equilibrium moisture, measured at 25° C., of at most 15%."

217.    The formulation of CRESEMBA® capsules is a non-effervescent solid medicinal form comprising an HPMC capsule filled with a capsule filling comprising: 20 to 40% by weight of a moisture-sensitive active ingredient (isavuconazonium sulfate), wherein said active ingredient is not trimagnesium dicitrate; 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and 5 to 30% by weight of a microcrystalline cellulose, wherein the medicinal form exhibits a relative equilibrium moisture, measured at 25°C, of at most 15%. The formulation of CRESEMBA® capsules is covered by the '280 Patent.

218.    The Annora Notice Letter does not dispute that Annora's Generic Products will be non-effervescent solid medicinal forms comprising HPMC capsules filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate, and microcrystalline cellulose, or that they will exhibit a relative equilibrium moisture within the scope of the claims.

219.    On information and belief, Annora's Generic Products will infringe one or more claims of the '280 Patent because Annora's Generic Products will be a non-effervescent solid medicinal forms comprising HPMC capsules filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage, and microcrystalline cellulose, and will exhibit a relative equilibrium moisture within the scope of the claims.

220.    On information and belief, the Annora Defendants' manufacture, use, sale, offer for sale, and/or importation into the United States of Annora's Generic Products prior to the expiration of the '280 Patent, including any applicable exclusivities or extensions, will directly infringe one or more claims of the '280 Patent under 35 U.S.C. § 271(a), either literally or under

44

the doctrine of equivalents.  The Annora Defendants will infringe one or more claims of the '280 Patent.

221.    On information and belief, the Annora Defendants were aware of the existence of the '280 Patent and its listing in the Orange Book as demonstrated by their reference to the '280 Patent in the Annora Notice Letter.

222.    On information and belief, the Annora Defendants copied the claimed invention of the '280 Patent.

223.    On information and belief, the Annora Defendants know or should know that their commercial manufacture, use, offer for sale, sale, and/or importation of Annora's Generic Products prior to patent expiry will infringe one or more claims of the '280 Patent.

224.    On information and belief, the Annora Defendants' statement of the factual and legal bases for their opinions regarding non-infringement and invalidity of the '280 Patent is devoid of an objective good faith basis either in the facts or the law.  This case is exceptional.

225.    Plaintiffs will be substantially and irreparably harmed by the infringing activities of the Annora Defendants as described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## COUNT VIII

### (Infringement of the '879 Patent by the Zenara Defendants)

226.    Plaintiffs incorporate each of the preceding paragraphs 1-142 as if fully set forth herein.

227.    By submitting the Zenara ANDA to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Zenara's Generic Product throughout the United States, including Delaware, prior to the expiration of the

ME1 51379016v.1

'879 Patent, the Zenara Defendants committed an act of infringement of the '879 Patent under 35 U.S.C. § 271(e)(2)(A).

228.    The '879 Patent claims, *inter alia*, solid medicinal forms containing a moisture-sensitive active ingredient and trimagnesium dicitrate.  Claim 1 recites "[a] non-effervescent solid medicinal form comprising a hydroxypropylmethylcellulose (HPMC) capsule filled with a capsule filling comprising: a. 30 to 40% by weight of a moisture-sensitive active ingredient, wherein said active ingredient is not trimagnesium dicitrate; b. 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and c. 5 to 30% by weight of a microcrystalline cellulose; wherein said medicinal form exhibits a drying loss, measured at 120° C./30 min, of 0.5 to 2.5% and a relative equilibrium moisture, measured at 25° C., of at most 15%."

229.    The formulation of CRESEMBA® capsules is a non-effervescent solid medicinal form comprising an HMPC capsule filled with a capsule filling comprising: 30 to 40% by weight of a moisture-sensitive active ingredient (isavuconazonium sulfate), wherein said active ingredient is not trimagnesium dicitrate; 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and 5 to 30% by weight of a microcrystalline cellulose, wherein the medicinal form exhibits a drying loss, measured at 120° C/30 min, of 0.5 to 2.5% and a relative equilibrium moisture, measured at 25°C, of at most 15%.  The formulation of CRESEMBA® capsules is covered by the '879 Patent.

230.    The Zenara Notice Letter does not dispute that Zenara's Generic Product will be a non-effervescent solid medicinal form comprising an HPMC capsule filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate, and microcrystalline

46

cellulose, or that it will exhibit a drying loss and a relative equilibrium moisture within the scope of the claims.

231.    On information and belief, Zenara's Generic Product, if approved by the FDA, will infringe one or more claims of the '879 Patent because Zenara's Generic Product will be a non-effervescent solid medicinal form comprising an HPMC capsule filled with moisture-sensitive active ingredient(isavuconazonium sulfate), trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage, and microcrystalline cellulose, and will exhibit a drying loss and a relative equilibrium moisture within the scope of the claims.

232.    On information and belief, the Zenara Defendants' manufacture, use, sale, offer for sale, and/or importation into the United States of Zenara's Generic Product prior to the expiration of the '879 Patent, including any applicable exclusivities or extensions, will directly infringe one or more claims of the '879 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.  The Zenara Defendants will infringe one or more claims of the '879 Patent.

233.    On information and belief, the Zenara Defendants were aware of the existence of the '879 Patent and its listing in the Orange Book as demonstrated by their reference to the '879 Patent in the Zenara Notice Letter.

234.    On information and belief, the Zenara Defendants copied the claimed invention of the '879 Patent.

235.    On information and belief, the Zenara Defendants know or should know that their commercial manufacture, use, offer for sale, sale, and/or importation of Zenara's Generic Product prior to patent expiry will infringe one or more claims of the '879 Patent.

ME1 51379016v.1

236. On information and belief, the Zenara Defendants' statement of the factual and legal bases for their opinions regarding non-infringement and invalidity of the '879 Patent is devoid of an objective good faith basis either in the facts or the law. This case is exceptional.

237. Plaintiffs will be substantially and irreparably harmed by the infringing activities of the Zenara Defendants as described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## COUNT IX

### (Infringement of the '280 Patent by the Zenara Defendants)

238. Plaintiffs incorporate each of the preceding paragraphs 1-142 as if fully set forth herein.

239. By submitting the Zenara ANDA to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Zenara's Generic Product throughout the United States, including Delaware, prior to the expiration of the '280 Patent, the Zenara Defendants committed an act of infringement of the '280 Patent under 35 U.S.C. § 271(e)(2)(A).

240. The '280 Patent claims, *inter alia*, solid medicinal forms containing a moisture-sensitive active ingredient and trimagnesium dicitrate. Claim 1 recites "[a] non-effervescent solid medicinal form comprising a hydroxypropylmethylcellulose (HPMC) capsule filled with a capsule filling comprising: a. 20 to 40% by weight of a moisture-sensitive active ingredient, wherein said active ingredient is not trimagnesium dicitrate; b. 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and c. 5 to 30% by weight of a microcrystalline cellulose; wherein said medicinal form exhibits a relative equilibrium moisture, measured at 25° C., of at most 15%."

ME1 51379016v.1

241.    The formulation of CRESEMBA® capsules is a non-effervescent solid medicinal form comprising an HPMC capsule filled with a capsule filling comprising: 20 to 40% by weight of a moisture-sensitive active ingredient (isavuconazonium sulfate), wherein said active ingredient is not trimagnesium dicitrate; 20 to 50% by weight of trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage; and 5 to 30% by weight of a microcrystalline cellulose, wherein the medicinal form exhibits a relative equilibrium moisture, measured at 25°C, of at most 15%. The formulation of CRESEMBA® capsules is covered by the '280 Patent.

242.    The Zenara Notice Letter does not dispute that Zenara's Generic Product will be a non-effervescent solid medicinal form comprising an HPMC capsule filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate, and microcrystalline cellulose, or that it will exhibit a relative equilibrium moisture within the scope of the claims.

243.    On information and belief, Zenara's Generic Product will infringe one or more claims of the '280 Patent because Zenara's Generic Product will be a non-effervescent solid medicinal form comprising an HPMC capsule filled with a moisture-sensitive active ingredient (isavuconazonium sulfate), trimagnesium dicitrate acting as a drying agent that stabilizes the moisture sensitive agent against hydrolysis during storage, and microcrystalline cellulose, and will exhibit a relative equilibrium moisture within the scope of the claims.

244.    On information and belief, the Zenara Defendants' manufacture, use, sale, offer for sale, and/or importation into the United States of Zenara's Generic Product prior to the expiration of the '280 Patent, including any applicable exclusivities or extensions, will directly infringe one or more claims of the '280 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents. The Zenara Defendants will infringe one or more claims of the '280 Patent.

49

245.    On information and belief, the Zenara Defendants were aware of the existence of the '280 Patent and its listing in the Orange Book as demonstrated by their reference to the '280 Patent in the Zenara Notice Letter.

246.    On information and belief, the Zenara Defendants copied the claimed invention of the '280 Patent.

247.    On information and belief, the Zenara Defendants know or should know that their commercial manufacture, use, offer for sale, sale, and/or importation of Zenara's Generic Product prior to patent expiry will infringe one or more claims of the '280 Patent.

248.    On information and belief, the Zenara Defendants' statement of the factual and legal bases for their opinions regarding non-infringement and invalidity of the '280 Patent is devoid of an objective good faith basis either in the facts or the law.  This case is exceptional.

249.    Plaintiffs will be substantially and irreparably harmed by the infringing activities of the Zenara Defendants as described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

### Against Cipla Defendants

WHEREFORE, Plaintiffs respectfully request the following relief:

A.    A judgment that the Cipla Defendants infringed one or more claims of United States Patent Nos. 6,812,238, 10,206,879, and 10,603,280 by submitting ANDA No. 219268 seeking FDA approval for the commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's Generic Products before expiration of those patents under 35 U.S.C. § 271(e)(2)(A);

50

B.      A judgment that the Cipla Defendants' commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's Generic Products will infringe one or more claims of the United States Patent Nos. 6,812,238, 10,206,879, and 10,603,280 under 35 U.S.C. § 271(a);

C.      A permanent injunction under 35 U.S.C. §§ 271(e)(4)(B) and/or 283 restraining and enjoining the Cipla Defendants, and their officers, agents, servants, employees, and those persons in active concert or participation with any of them from engaging in the commercial manufacture, use, offer for sale, sale in, and/or importation into the United States of Cipla's Generic Products prior to the expiration date of United States Patent Nos. 6,812,238, 10,206,879, and 10,603,280, inclusive of any extensions;

D.      An order under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of ANDA No. 219268 (the Cipla ANDA) under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)) shall be a date that is not earlier than the expiration date of United States Patent Nos. 6,812,238, 10,206,879, and 10,603,280, inclusive of any extensions;

E.      A judgment that the claims of United States Patent Nos. 6,812,238, 10,206,879, and 10,603,280 are not invalid and are enforceable;

F.      If the Cipla Defendants engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's Generic Products prior to the expiration of United States Patent Nos. 6,812,238, 10,206,879, and/or 10,603,280, a judgment awarding damages to Plaintiffs resulting from such infringement, with all costs and interests;

G.      A declaration that this case is "exceptional" under 35 U.S.C. § 285 and an award of attorney fees;

H.      An award of costs and expenses in this action; and

I.      Such further and additional relief that this Court deems just and proper.

51

**Against Hangzhou Defendants**

WHEREFORE, Plaintiffs respectfully requests the following relief:

A.      A judgment that the Hangzhou Defendants infringed one or more claims of United States Patent Nos. 10,206,879 and 10,603,280 by submitting ANDA No. 219867 seeking FDA approval for the commercial manufacture, use, offer for sale, sale, and/or importation of Hangzhou's Generic Product before expiration of those patents under 35 U.S.C. § 271(e)(2)(A);

B.      A judgment that the Hangzhou Defendants' commercial manufacture, use, offer for sale, sale, and/or importation of Hangzhou's Generic Product will infringe one or more claims of United States Patent Nos. 10,206,879 and 10,603,280 under 35 U.S.C. § 271(a);

C.      A permanent injunction under 35 U.S.C. §§ 271(e)(4)(B) and/or 283 restraining and enjoining the Hangzhou Defendants, and their officers, agents, servants, employees, and those persons in active concert or participation with any of them from engaging in the commercial manufacture, use, offer for sale, sale in, and/or importation into the United States of Hangzhou's Generic Product prior to the expiration of United States Patent Nos. 10,206,879 and 10,603,280, inclusive of any extensions;

D.      An order under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of ANDA No. 219867 (the Hangzhou ANDA) under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)) shall be a date that is not earlier than the expiration date of United States Patent Nos. 10,206,879 and 10,603,280, inclusive of any extensions;

E.      A judgment that the claims of United States Patent Nos. 10,206,879 and 10,603,280 are not invalid and are enforceable;

F.      If the Hangzhou Defendants engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Hangzhou's Generic Product prior to the expiration of United

52

States Patent Nos. 10,206,879 and/or 10,603,280, a judgment awarding damages to Plaintiffs resulting from such infringement, with all costs and interests;

G.      A declaration that this case is "exceptional" under 35 U.S.C. § 285 and an award of attorney fees;

H.      An award of costs and expenses in this action; and

I.      Such further and additional relief that this Court deems just and proper.

**Against Annora Defendants**

WHEREFORE, Plaintiffs respectfully requests the following relief:

A.      A judgment that the Annora Defendants infringed one or more claims of United States Patent Nos. 10,206,879 and 10,603,280 by submitting ANDA No. 219439 seeking FDA approval for the commercial manufacture, use, offer for sale, sale, and/or importation of Annora's Generic Products before expiration of those patents under 35 U.S.C. § 271(e)(2)(A);

B.      A judgment that the Annora Defendants' commercial manufacture, use, offer for sale, sale, and/or importation of Annora's Generic Products will infringe one or more claims of United States Patent Nos. 10,206,879 and 10,603,280 under 35 U.S.C. § 271(a);

C.      A permanent injunction under 35 U.S.C. §§ 271(e)(4)(B) and/or 283 restraining and enjoining the Annora Defendants, and their officers, agents, servants, employees, and those persons in active concert or participation with any of them from engaging in the commercial manufacture, use, offer for sale, sale in, and/or importation into the United States of Annora's Generic Products prior to the expiration of United States Patent Nos. 10,206,879 and No. 10,603,280, inclusive of any extensions;

D.      An order under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of ANDA No. 219439 (the Annora ANDA) under Section 505(j) of the Federal Food,

53

Drug, and Cosmetic Act (21 U.S.C. § 355(j)) shall be a date that is not earlier than the expiration date of United States Patent Nos. 10,206,879 and 10,603,280, inclusive of any extensions;

E.      A judgment that the claims of United States Patent Nos. 10,206,879 and 10,603,280 are not invalid and are enforceable;

F.      If the Annora Defendants engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Annora's Generic Products prior to the expiration of United States Patent Nos. 10,206,879 and/or 10,603,280, a judgment awarding damages to Plaintiffs resulting from such infringement, with all costs and interests;

G.      A declaration that this case is "exceptional" under 35 U.S.C. § 285 and an award of attorney fees;

H.      An award of costs and expenses in this action; and

I.      Such further and additional relief that this Court deems just and proper.

### Against Zenara Defendants

WHEREFORE, Plaintiffs respectfully requests the following relief:

A.      A judgment that the Zenara Defendants infringed one or more claims of United States Patent Nos. 10,206,879 and 10,603,280 by submitting ANDA No. 219402 seeking FDA approval for the commercial manufacture, use, offer for sale, sale, and/or importation of Zenara's Generic Product before expiration of those patents under 35 U.S.C. § 271(e)(2)(A);

B.      A judgment that the Zenara Defendants' commercial manufacture, use, offer for sale, sale, and/or importation of Zenara's Generic Product will infringe one or more claims of United States Patent Nos. 10,206,879 and 10,603,280 under 35 U.S.C. § 271(a);

C.      A permanent injunction under 35 U.S.C. §§ 271(e)(4)(B) and/or 283 restraining and enjoining the Zenara Defendants, and their officers, agents, servants, employees, and those

ME1 51379016v.1

persons in active concert or participation with any of them from engaging in the commercial manufacture, use, offer for sale, sale in, and/or importation into the United States of Zenara's Generic Product prior to the expiration of United States Patent Nos. 10,206,879 and 10,603,280, inclusive of any extensions;

D.      An order under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of ANDA No. 219402 (the Zenara ANDA) under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)) shall be a date that is not earlier than the expiration date of United States Patent Nos. 10,206,879 and 10,603,280, inclusive of any extensions;

E.      A judgment that the claims of United States Patent Nos. 10,206,879 and are not invalid and are enforceable;

F.      If the Zenara Defendants engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Zenara's Generic Product prior to the expiration of United States Patent Nos. 10,206,879 and/or No. 10,603,280, a judgment awarding damages to Plaintiffs resulting from such infringement, with all costs and interests;

G.      A declaration that this case is "exceptional" under 35 U.S.C. § 285 and an award of attorney fees;

H.      An award of costs and expenses in this action; and

I.      Such further and additional relief that this Court deems just and proper.

55

Dated: December 6, 2024

OF COUNSEL:

Dominick A. Conde
Erin J.D. Austin
Damien N. Dombrowski
VENABLE LLP
151 West 42nd Street
New York, NY 10036
(212) 307-5500

**MCCARTER & ENGLISH, LLP**

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
T: (302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs Astellas Pharma
Inc., Astellas US LLC, Astellas Pharma
US, Inc., and Basilea Pharmaceutica
International Ltd, Allschwil*

56